Good afternoon. We have one case to hear. It is United States v. Casados, No. 20-1006 and 20-1216. We will first hear from Appellant's Counsel, Mr. Norris. Good afternoon, Your Honors. It may please the Court. David Norris on behalf of Appellant Twyla Casados, and I plan to reserve three minutes for rebuttal. Now before starting, I'd like to just briefly thank this Court for the last-minute rescheduling of this argument. I sincerely appreciate the accommodation and the understanding. The District Court ordered Ms. Casados to pay restitution for transportation expenses, even though the victim in this case had no such expenses. This was legal error. The MVRA only authorizes courts to order restitution to reimburse the victim for transportation expenses. Nothing in the MVRA permits courts to order restitution to a victim representative for the representative's own expenses. Now only one... Mr. Norris, let me ask you this right away because it goes right that your statement is very hard in the case and that's what we want to get to. You don't dispute, do you, that under 363-AA2 that Mr. Rivas himself, not his family, just Mr. Rivas, is another family member, correct? I do not dispute that, correct. And as a consequence, you don't dispute that he may assume the victim's rights, correct? Correct. I do not dispute that. Is one of those rights the ability to attend the hearing in this very proceeding that the victim cannot because she's dead? Well, I would quarrel with that a little. I think the relevant right in B-4 is the right to obtain an order of restitution to reimburse the victim for transportation expenses to participate in the hearing. So Mr. Rivas certainly can assume that right, the right to receive an order to reimburse the victim, but the victim didn't have any expenses that are subject to reimbursement. But if he assumes the victim's rights and specifically provides for the victim on lost income, child care expenses, transportation for attending proceedings, why shouldn't he stand in the shoes of the victim for that? Because this is entirely different than the statutory provision talked about at Wilson. I agree. B-2 and B-4 are a little different in that in B-2, the victim it's talking about has to be the victim who suffered bodily injury. In Wilcox, the Eighth Circuit correctly recognized the spouse wasn't the victim who suffered bodily injury. So are we in agreement that Wilson doesn't apply to subpart four? Well, we're not, I don't think, because I think in Wilcox, then the second step is once you decide who's the relevant victim for purposes of the statute, Wilcox moves from, says in B-2, that the spouse doesn't meet that test. Well, and I know that the government's argued as a fallback that Mr. Rivas and his family can meet that test, but right now we're talking about victim representative. We're in the same cases, same situation as Wilcox, which is to say, let's assume that the family and Mr. Rivas are not victims because they were not directly approximately harmed. They're just victim representatives. Then the next holding from Wilcox after that B-2 holding is fundamentally on all fours. What the Eighth Circuit said is, they assume the victim's rights. That's the language it's interpreting, what you can do under A-2. It says, that simply provides that the court may order the defendant to pay the victim's representative, rather than the victim herself, the restitution owed to the victim. The section does not allow the representative to substitute her own losses for those of the victim. And so that part of Wilcox interpreting the assume the victim's rights language, our contention certainly is that that absolutely applies to B-4. Even though they didn't address B-4. Correct, because that part of Wilcox is interpreting what assume the victim's rights means. It's in a bodily injury case. Say that again. It's in a bodily injury case under subparagraph two. Agreed. So again, the way I understand the distinction there is Wilcox is saying that the spouse couldn't be the victim for purposes of B-2 because she didn't suffer bodily injury. Again, just assuming right now we're just talking about a victim representative, not whether they're victims or not, then the analysis is still the same under A-2, what you get when you assume the victim's rights and what Wilcox held, and certainly our interpretation of the statute is, you get to enforce the victim's rights, but the representative doesn't get their own restitution. And another way of supporting that interpretation, Your Honor, is I think the point of the assume the victim's right provision. It's there because Congress has made a determination that minors, incompetent, incapacitated victims aren't capable of enforcing their own rights. And so they can have a victim representative step in, assume those rights, and enforce them on behalf of the victim. But there's no indication in the statutory language that Congress intended the victim representative to get the victim representative's own expenses covered. And again, that's why B-4 talks about- Well, there's nothing in statutory language to eliminate that either. I mean, you're putting your own gloss on that, your own legislative history, so to speak. What I would say, what limits it, in my opinion, Your Honor, is the reimburse the victim language in B-4. And again, if the right you get under A-2 is to assume the victim's rights, then under subsection D, the victim has a right to receive the order of restitution that requires the defendant, and then you go to subsection B-4, in any case, reimburse the victim. So there has to be victim losses, transportation expenses, child expenses, whatever the covered expenses in B-4, in order to reimburse the victim for those expenses. And of course, the victim representative, by virtue of A-2, can assume those rights, but it doesn't give the victim representative a right to recover restitution for its own losses. But why isn't the interpretation in Wilson limited to cases where there is bodily injury? And it has different language in subpart C, which is, you know, to C, you're talking about such victim, which is different than the victim in a substitution, a substitute for the victim. Isn't that true? Yeah, it is true. It's certainly true that under B-2, to get restitution under B-2, you have to be the victim who suffered bodily injury. Hard to think of a hypothetical on the spot here, but you can imagine an offense that caused, let's say, pecuniary harm to victim A, and just bodily injury to victim B. Under B-2, the defendant who suffered just pecuniary harm might not be able to get restitution under B-2 because they aren't the victim who suffered bodily injury. Only the victim who suffered bodily injury could. But that doesn't change the fact that B-2 is still concerned with victims who suffered bodily injury. B-4 is still concerned with reimbursing the victim. So you have to be a victim under B-4 to have an order of restitution that reimburses the victim for transportation expenses. Well, the other thing is that B-2 has the focus on treatment. B-4 has the focus on attending proceedings. And doesn't that make that different then? Doesn't that change the outcome? I don't think so, Your Honor. I mean, and again, because I think the relevant interpretive question is what rights do you get when you assume the victim's rights? And under B-4, the right you get is to receive an order that reimburses the victim for transportation expenses. That's no different than the right you get in B-2. In B-2C, for example, to obtain an order of restitution that reimburses the victim for lost income. But wouldn't that be very bizarre when under A-A-2, there's a recognition that sometimes the absence is due to death. And wouldn't it be bizarre to then provide for attendance at proceedings, investigations, things like this, dealing with this very case, and to talk about reimbursement of the transportation costs and lost income when you should be contemplating that it could be somebody other than the actual victim because the victim's dead. Wouldn't that be kind of a strange outcome? The reason I don't think it's a bizarre or strange outcome is because transportation expenses under B-4 are just one of the categories of covered losses and expenses under the MVRA. And deceased victims are only one of the categories of victims with assumable rights. There's also minor, incompetent, incapacitated victims. Those victims might very well have their own transportation expenses. Those might be different than the victim representative's transportation expenses. And there's no reason the victim representative should be able to substitute its own losses, its own expenses in favor of those living victims. And then the other point would be, Your Honor, because B-4 is only one of the categories, it's obvious Congress did not intend every category of victim with assumable rights would have every category of covered loss in every case. Because, for example, B-3 covers funeral expenses. Minor, incompetent, incapacitated defendants, victims, excuse me, aren't going to have funeral expenses. They're probably not going to have child care expenses under B-4 either. So there's just no statutory intent, no reason to read the statute to ensure that every category of victim gets every, you know, category of covered loss in every single case. In cases like this one, counsel, where the victim dies immediately, I think that's what happened here. Would the only category of expenses really be funeral expenses that would apply? I don't think so. Presumably, you'd have a different category, different categories might apply if the victim had lived for a period of time and then dies. You might have the victim having rights in particular categories that are assumed by the representative. Well, what I'd say is, you know, a living victim or a victim who's killed as a result immediately from the Commission of Defense, they still might have property losses under B-1. In this case, there could have been a commission, for example, for the value of the vehicle that the victim was driving in when the accident occurred. They might have lost income. They're no longer able to work and continue. So there are, I think there are, and there might have funeral expenses under B-3. Lost income, really, if you die immediately? Is that, I guess, okay. In this court's decision in U.S. versus Sarawak, it held a three-month-old could have lost income, future income, that what she was deprived as a result of being killed. All right. And if there's no other questions, at least at this time, I reserve the remainder. I need, Mr. Norris, I'd like to get clarification on one of the questions that Judge Murphy asked you about Wilcox. In that case, Wilcox concerned the B-2 provision, and the language there was restitution awarded to reimburse the victim for income lost by such victim. And B-4, that provision does not specify that transportation expenses must be reimbursed. What's the significance of the presence of the phrase such victim in B-2 and the absence of it in B-4? The significance is such victim in B-2 means the victim who suffered bodily injury. So the absence of it in B-4 means, certainly, it doesn't have to be the victim who suffered bodily injury. But because B-4 still talks about reimbursing the victim, it still has to be a victim, at least, whose transportation expenses are subject to restitution. And that's because, at least under Wilcox, and certainly the interpretation we offer, that's because of how the court in Wilcox interpreted the assume the rights provision and what that means. And what the court said, again, is assume the rights means you get restitution that could have been paid to the victim. You don't get restitution for the representative's own expenses. Okay. Thank you, counsel. I know you want some time for rebuttal. Mr. Farley? Thank you. May it please the court, Paul Farley for the government. I think Judge Murphy has put his finger on it. And so I'd like to start with talking about Mr. Rivas. If time permits, then maybe talk about his family. And I start with 3663A-A1, which says the defendant must make restitution to the victim of the offense, or if the victim is deceased, to the victim's estate. And this is key here, because in this case, we obviously are talking about the estate of the victim, not the victim's personally. Because, as Mr. Norris points out, the victim did not travel to court. Well, Mr. Farley, how did the transportation expenses for Mr. Rivas have anything to do with reimbursing the estate? I will tell you, Your Honor, because a legitimate expense of the estate is to have someone represent the estate's interest, the decedent's interest, at the court proceeding. Where does that in the statute or any case? Do you have any authority for that statement? Well, there are certainly cases which we cite in our brief. The Hawk case comes to mind. Just give me a case. I don't recall a case that supports what you just said. All right. That the representative of the estate can come to court. Is that right? In the District of South Dakota, the district court there, granted it's a district court decision, the district court there found that the decedent's wife was essentially twofold. One, as a representative, and she had travel expenses to go to court, and also as a victim in her own right. And interestingly enough there, the court there allocated or allowed restitution for her travel for her own associated with it because it separated those out. And this only makes sense because let's talk about... But she was a victim. Counsel, counsel, she was a victim. How is Mr. Reeves a victim? Your Honor, do you want to shift to the victim discussion then? Because I was trying to answer Judge Murphy's question. You just gave me a case where restitution was given to a spouse, but you said the spouse was a victim. So I'm asking you... The court... Excuse me, let me just finish. How is Mr. Reeves a victim along the lines that the spouse was in your New York case? He is not a victim, Your Honor, as a representative. He is a victim as a family member. And so I want to keep those separate. Okay, you're going to have to explain that. I don't understand the distinction. Okay. The statute says that restitution is payable to the victim or if the victim is deceased, to the victim's estate. All right. Mr. Reeves was appointed by the court as a representative of the estate, as a family member. Now, this makes perfect sense if we look at the funeral and related services, which everybody seems to agree are payable here. But to put a fine point on it, at the point where someone passes away, they have incurred no funeral expenses. And once they pass away, those expenses are actually expenses of the estate. And it's appropriate for the victim's representative to secure payment of those expenses for the estate, in addition to other things they may do. What has to do with anything in this case? We're talking about Mr. Reeves as a family member. He's not here as a victim, correct? Our argument is that he actually qualifies both as a family member appointed to member agreed by the loss of his mother. And that's I'm trying to argue that. Are you saying that this institution, let me call it, called an estate, has the right to attend a sentencing hearing for the decedent? That's right. A representative of that estate has that right. That's exactly right, your honor. What about a family member? Well, the family member can be a representative of the estate. The statute speaks. They're there then as a fight between the representative of the estate and the family member as to who should be representing the victim at a sentencing hearing. I would say theoretically that's possible. It's not the case here. Again, there are a couple of footnotes in that. Mr. Farley, isn't this so far afield of the very matter and issue and the matters that we discussed for almost 15 minutes with opposing counsel? I don't see where this is leading us to. Well, where it leads us to, your honor, is that because Mr. Rivas represents the estate and it stands in the shoes of the estate, he can travel to court and attend court hearings on behalf of the estate. Assuredly, if Ms. Bailey had survived, she would have been able to come and testify or just attend, but she could have testified at the sentencing hearing explaining about what the incident meant to her and to her family. Now, that doesn't just vanish because she passes away. Her family, the representative, can come and make the same case for restitution and for a longer sentence and any other thing a victim would have been able to do at the time. The question is, is that representative entitled to reimbursement under subparagraph four? You have yet to talk about that. I don't think anybody's, and no one disputes that they have a right to be there as her family members, as representatives. They have a right to be present. That's not our issue. The issue is reimbursement. Absolutely. Let's take the example that was discussed earlier about could restitution have been sought for the destruction of the vehicle? Yes. Who would be the person who would be able to advocate for that and to receive that? It'd be the representative of the estate. But that's not the expenses we're talking about. Travel expenses to the hearing. No. And that is the victim under the language of B4. It's the victim who's entitled to reimbursement. Mr. Farley, what if Mr. Rivas lost income because he came and attended the hearing? Could he get restitution for lost income? For his own lost income? Yes. Just like he wants expenses for his own transportation. I would say theoretically, yes, but he'd have to make that case. Mr. Farley, it says lost income in the same breadth that it says transportation costs under paragraph four, which is what we're talking about. So why wouldn't income, clearly, not hypothetically or academically or whatever you said, it's clearly in the statute, isn't it? Yes, it's in the same clause, what I was referring to, your honor. It's of equal import as transportation expenses, correct? Yes, your honor. Yes, your honor. All right. Mr. Farley, does this Wilcox case that we discussed at length with Mr. Norris, does it help you or hurt you? I think it's irrelevant, your honor, because we are not seeking lost wages on behalf of someone other than the person who actually, physically was injured. Well, we are talking about transportation expenses that were also not incurred by the person who was injured or in this instance. Yes, but B-4 doesn't require, as Judge Murphy pointed out, require that it be such victim. Rather, B-4 is a catch-all in any case provision. And so I think it's a different kind of fish. But as Mr. Norris pointed out, it does say the victim. What's the difference? It depends on... It's not a victim, it's not a victim's representative, it's the victim. Your honor, I think, again, the victim's representative, their role is on behalf of the estate. And if the victim representative represented the estate at a court proceeding, they should be entitled to restitution. But in this case, Mr. Rivas is separately a family member and a separate victim, not purely by virtue of his representation status, but as a family member, and the district court so found. And in that case, as a family member who not only came to the proceeding, but actually testified about his loss and the loss that his family suffered, he would be entitled to restitution on that account. And his wife and kids as well? And his wife and kids. How far would you go with that? I mean, what if we're talking about an extended family? Do they all get their travel expenses reimbursed? I would say that I can go as far as a district court would be willing to go, unless this court thought there was an abuse of discretion. That is, someone has to come in and ask for it, claim that their victim status, make the case, and the court has to so rule. Now, as a practical matter, I could have seen this case. Counsel, the court has to comply with the statute. And so, I guess my question then is, it seems to me you're really willing to say the statute will cover everything, but the definition of a victim does extend beyond just someone who suffered physical injury in a crime. I mean, and the cases are clear on that, and we provided those in our brief. But I think in the Hawk case, again, the court said no one could be more victimized than the wife and children of the decedent. Well, of course, and I think that stands to reason. Any other authority besides the Hawk case? Well, I think Hawk is probably the one that, from up one side and down the other, best walks through the analysis. But there is the juvenile female case in the Ninth Circuit, 2008, where the mother took seven months off from work to search for a missing son, and the court found that that was a direct and foreseeable result, and she was a victim under B-4. Specifically found that it was under B-4. You know, I think the yellow case is kind of interesting. So, directly, the victim is a person who is directly harmed, however. Directly harmed. That's right. I think if you kill someone's parent, your honor, I would submit that if you kill someone's parent, you've directly harmed their children. I think that case could be made. We wouldn't award it in every case, but if the family comes and, you know, those victims come and ask for that, and the court so finds, absolutely. What about counseling for, you know, grief counseling for, in this case, for everyone who was emotionally harmed by the victim's death, and there may have been a number of people. What about that? I don't think the grief counseling falls under B-4. If anywhere, it probably falls under B-2, which, again, would be restricted to people who are physically injured in the offense in question. I certainly agree with what this court said in Sarawak, that this is not an artfully driven, written piece of statute, but I think that's how it's intended to be applied, and again, I think that... I feel like the word directly is meant to narrow it to victims directly and proximately harmed, and I think that has to have some meaning here. Well, I think it does. And whoever steps into that person's rights who is directly and proximately harmed. It's still the victim who must be directly and proximately harmed. Well, Your Honor, I think that's conflating two different parts of the definition of victim. In one case, you're stepping into someone else's rights. In another case, you are a victim in your own right. To sort of tie in with Judge Mathison's question, if you had a third cousin... Go ahead. I'm sorry? Finish, I'm sorry. I see my time has expired. Okay. Judge Mathison asked sort of a limiting... Okay, go ahead and finish up your thought. Yeah, I would just say, if someone came in as a third cousin twice removed and said, I'm a victim, they would have to make that showing to the district court. I would not presume that person would necessarily be, just because they're related, that they would have a victim status. But a next door neighbor who has no blood or marriage relationship might have a very, very close relationship with the person who's been victimized and might be able to make that case. This is a fact-bound question. I'm sorry. All right. Thank you, counsel. Mr. Norris, you have some rebuttal time. Three brief points to make on rebuttal, Your Honors. First, the government has argued that these expenses are recoverable because they're owed to the victim's estate. There's nothing in the record, though, no facts in the record showing that Mr. Rebus was acting on behalf of the victim's estate or that these expenses were paid from the victim's estate. So that's a red herring. Second, the government has argued that Mr. Rebus is a victim because he was proximately and directly harmed by the commission of the offense. The problem is they forfeited that argument by not raising it in the district court. As the government put in its brief before this court, they never foreswore that argument. The problem, of course, is under U.S. First Amendment, it's the government's burden to prove victims who are directly and proximately harmed as a result of the commission of the offense. Obviously, they didn't do that. Counsel, if the record supports the argument, though, isn't it an alternative ground to affirm that would be available to this court? It is, Your Honor. I see my time is about to expire. Can I answer the question? Please. The record doesn't adequately support it, though, because there's no facts in the record to show that he was directly and proximately harmed as a result of the commission of the offense. Being a family member alone certainly can't be sufficient. There'd have to be some additional testimony, and under this court's precedent, it does have to go beyond just the loss of a family member. So in United States v. Jakora, this court held children were victims when their father was murdered because they lost a source of financial support. In Sarawak, when a mother lost her three-month-old daughter, I mean, there's no greater emotional grief loss than losing a child, but this court held that she was merely a victim representative. So that leaves whether or not standing in the shoes of the victim, that Mr. Revis himself could recover for attending the sentencing proceedings under subparagraph B-4, correct? Correct. In my opinion, the only— were about him as a victim or him as a representative of the estate, correct? Everything I raised in rebuttal was about him not being a victim except for the estate point, just to say there's nothing in the record that he was acting on behalf of the estate or their patient estate. Understood. All right. Well, thank you, counsel. Thank you to you both. We will consider the case submitted. Counsel are excused.